UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIE LEE HARMON,

                Petitioner,

v.                              Case No. 3:12-cv-772-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

**ORDER**

**I. Status**

    Petitioner Willie Lee Harmon, an inmate of the Florida penal system, initiated this action on July 9, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254 and a Supplement (Doc. 5). In the Petition, Harmon challenges a 2007 state court (Duval County, Florida) judgment of conviction for burglary of an occupied structure. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 12) with exhibits (Resp. Ex.). On October 19, 2012, the Court entered an Order to Show Cause

and Notice to Petitioner (Doc. 7), admonishing Harmon regarding his obligations and giving Harmon a time frame in which to submit a reply. Harmon submitted a brief in reply. See Petitioner's Reply to Respondents' Answer to show Cause and Petition for Writ of Habeas Corpus (Reply; Doc. 14); Supplement (Doc. 15). This case is ripe for review.

## II. Procedural History

On January 22, 2007, the State of Florida charged Harmon with burglary of an occupied structure. Resp. Ex. C at 9, Information. Harmon proceeded to trial in April 2007, see Resp. Ex. C, Transcript of the Jury Trial (Tr.), at the conclusion of which, on April 24, 2007, a jury found him guilty of burglary of an occupied structure, as charged. See Resp. Ex. C at 62, Verdict; Tr. at 310. On May 24, 2007, the court sentenced Harmon to a term of imprisonment of fifteen years. Resp. Ex. C at 78-83, Judgment; 95-113, Transcript of the Sentencing (Sentencing Tr.).

On appeal, Harmon, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it: impermissibly limited Harmon's voir dire examination (ground one), and failed to permit Harmon to testify about whether he had the intent to commit theft (ground two). Resp. Ex. D. In its answer brief, the State sought affirmance on the grounds of harmless error

and failure to preserve the alleged errors for appellate review.[1] Resp. Ex. E. On July 31, 2008, the appellate court affirmed Harmon's conviction and sentence per curiam, with a separate concurring opinion, see Harmon v. State, 987 So.2d 241 (Fla. 1st DCA 2008); Resp. Ex. F, and the mandate issued on August 18, 2008, see Resp. Ex. G. Harmon did not seek review in the United States Supreme Court.

On January 21, 2009, Harmon filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. I at 1-10. In his request for post conviction relief, Harmon asserted that counsel was ineffective because she failed to object to: Ms. Hortense Johnson's service as a juror (ground one); the trial court's limiting Harmon's testimony as to his intent upon entering the property (ground two); and the State's pretrial motion in limine (ground four).[2] He also asserted that counsel was ineffective because she failed to impeach Chris Scarborough, a State witness, when he described the area in question as being a fenced-in secure area (ground three), and that

---

[1] See Harmon v. State, 987 So.2d 241, 242 n.* (Fla. 1st DCA 2008) (Browning, C.J., concurring).

[2] The State requested that the trial court prohibit Harmon from introducing evidence, cross-examining witnesses, and/or arguing to the jury that the fenced-in area around the air-conditioning units (where Harmon was apprehended) must be totally enclosed for the area to fall within the meaning of structure, as defined in Florida's burglary statute. See Resp. Ex. C at 41, State's First Motion in Limine. The trial court granted the motion. See id.

counsel's cumulative errors substantially impaired Harmon's right to a fair trial (ground five). In an amended request for post conviction relief, Harmon asserted that the trial court erred when it sentenced him as a habitual felony offender (ground six). <u>Id</u>. at 18-21. The State responded. <u>Id</u>. at 22-29. On June 9, 2009, the circuit court denied Harmon's motion, as to the five ineffectiveness claims, for the reasons set forth in the State's response. <u>Id</u>. at 30-100. Harmon did not appeal.

On August 9, 2009, Harmon filed a pro se motion to correct illegal sentence. <u>Id</u>. at 104-08. The circuit court denied the motion on September 23, 2009. <u>Id</u>. at 109-24. Harmon did not appeal.

On October 16, 2009, Harmon filed a second motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. <u>Id</u>. at 125-55. He subsequently supplemented the motion on December 15, 2009, March 2, 2010, March 9, 2010, and April 27, 2010. <u>Id</u>. at 156-60, 161-77, 178, 179-208, 209-25. In his requests for post conviction relief, he asserted that counsel was ineffective because she failed to present a defense that he could not be convicted of burglary of an occupied structure because no one occupied the fenced-in area where Harmon was apprehended, <u>id</u>. at 127, 211, and failed to impeach three State witnesses (Sara Miller, Christopher Scarborough, and Detective Noell Dunn), <u>id</u>. at 164-65. He also asserted that the trial court lacked subject matter jurisdiction to enter the judgment or impose sentence. <u>Id</u>. at 157.

4

The State responded. <u>Id</u>. at 227-63. On September 1, 2010, the circuit court denied Harmon's motion based on the State's reasons. <u>Id</u>. at 264-302. On appeal, Harmon filed a pro se brief, <u>see</u> Resp. Ex. J, and the State notified the court that it did not intend to file an answer brief, <u>see</u> Resp. Ex. K. On March 9, 2011, the appellate court affirmed the trial court's denial per curiam, <u>see</u> <u>Harmon v. State</u>, 64 So.3d 1264 (Fla. 1st DCA 2011); Resp. Ex. L, and later denied Harmon's motion for rehearing on April 27, 2011, <u>see</u> Resp. Exs. M; N; O; P. The mandate issued on July 26, 2011. <u>See</u> Resp. Ex. Q.

On January 10, 2011, Harmon filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. S at 1-5. The court denied the motion on November 30, 2011. <u>Id</u>. at 6-29. On March 30, 2012, the appellate court affirmed the trial court's denial per curiam, <u>see</u> <u>Harmon v. State</u>, 93 So.3d 1016 (Fla. 1st DCA 2012); Resp. Ex. T, and later denied Harmon's motion for rehearing on June 6, 2012, <u>see</u> Resp. Exs. U; V. The mandate issued on June 22, 2012. <u>See</u> Resp. Ex. W.

On August 26, 2011, Harmon filed a pro se petition for writ of habeas corpus. Resp. Ex. Y. In the petition, he asserted that appellate counsel was ineffective because he failed to raise the following issues on direct appeal: the trial court erred when it summarily denied Harmon's motion for a new trial, and failed to define the term "curtilage" to the jury. Citing Florida Rule of

Appellate Procedure 9.141(d)(5),[3] the appellate court dismissed the petition on September 23, 2011. Resp. Ex. Z.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's]

---

[3] Florida Rule of Appellate Procedure 9.141(d)(5) provides:

> A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.

6

claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Harmon's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt</u>

v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).
>
> For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. –, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n

'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. See Richter, 131 S.Ct. at 786-87; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th

Cir. 2014); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230

(11th Cir. 2014).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

9

claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Harmon's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See,

> e.g., <u>Coleman</u>,[4] <u>supra</u>, at 747-748, 111 S.Ct.
> 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
> v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v.
> Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612,
> 617-618, 175 L.Ed.2d 417 (2009). The doctrine
> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Maples v.

Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id</u>.
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In <u>Martinez</u>, the Supreme Court modified the general rule in <u>Coleman</u>[6] to expand the "cause" that may excuse a procedural default. <u>Martinez</u>, 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a
> claim of ineffective assistance of trial
> counsel when an attorney's errors (or the
> absence of an attorney) caused a procedural
> default in an initial-review collateral
> proceeding acknowledges, as an equitable
> matter, that the initial-review collateral
> proceeding, if undertaken without counsel or
> with ineffective counsel, may not have been
> sufficient to ensure that proper consideration
> was given to a substantial claim. From this it
> follows that, when a State requires a prisoner
> to raise an ineffective-assistance-of-trial-
> counsel claim in a collateral proceeding, a
> prisoner may establish cause for a default of
> an ineffective-assistance claim in two

---

[6] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (citing <u>Coleman</u>, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. <u>Coleman</u>, 501 U.S. at 753-54. In <u>Coleman</u>, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. <u>Id</u>. at 755. However, the <u>Martinez</u> Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

[I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S.Ct. at 2649.[7] "This exception is exceedingly narrow in scope," however, and

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

14

> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the

15

"wide range" of reasonable professional
assistance. Id., at 689, 104 S.Ct. 2052. The
challenger's burden is to show "that counsel
made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment." Id., at
687, 104 S.Ct. 2052.

With respect to prejudice, a challenger
must demonstrate "a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different. A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." Id., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." Id., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." Id., at 687, 104
S.Ct. 2052.

Richter, 131 S.Ct. at 787-88. Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." Ward

v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted).

A state court's adjudication of an ineffectiveness claim is

accorded great deference.

"[T]he standard for judging counsel's
representation is a most deferential one."
Richter, - U.S. at -, 131 S.Ct. at 788. But
"[e]stablishing that a state court's
application of Strickland was unreasonable
under § 2254(d) is all the more difficult. The
standards created by Strickland and § 2254(d)
are both highly deferential, and when the two
apply in tandem, review is doubly so." Id.
(citations and quotation marks omitted). "The
question is not whether a federal court

16

believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see also Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision."). "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Harmon asserts that counsel (Assistant Public Defender Rita M. Mairs) was ineffective because she failed to object when the trial court improperly limited Harmon's testimony as to his intent to commit theft. Harmon raised the claim in his first Rule 3.850 motion, <u>see</u> Resp. Ex. I at 5-6; the State responded, <u>see id</u>. at 25-26, and the circuit court denied Harmon's motion, as to this claim, based on the State's reasons, <u>see id</u> at 30. Harmon did not appeal the trial court's denial. Respondents

17

contend that the claim is procedurally barred since Harmon failed
to appeal the trial court's denial. See Response at 6-9. On this
record, the Court agrees that the claim has not been exhausted, and
is therefore procedurally barred since Harmon failed to raise the
claim in a procedurally correct manner. Harmon has not shown either
cause excusing the default or actual prejudice resulting from the
bar.[8] Moreover, he has failed to identify any fact warranting the
application of the fundamental miscarriage of justice exception.

Assuming that Harmon's claim is not procedurally barred,
Harmon is not entitled to relief. As previously stated, Harmon
raised this ineffectiveness claim in his first Rule 3.850 motion,
and the State responded as follows:

> In Ground 2 of the Defendant's motion, he
> contends that his counsel rendered ineffective
> assistance by failing to object to the trial
> court when it improperly limited the
> Defendant's testimony. He alleges he wanted to
> testify about his intent upon entering the
> burglarized property, but he was prohibited
> from doing so by the Court. Upon a review of
> the record, the Defendant is simply in error
> as he was allowed to testify as to intent when
> he entered the subject premises. (TT, page
> 253, lines 3-7, and page 255, lines 1-7 and

---

[8] "To overcome the default, a prisoner must also demonstrate
that the underlying ineffective-assistance-of-trial-counsel claim
is a substantial one, which is to say that the prisoner must
demonstrate that the claim has some merit." Martinez, 132 S.Ct. at
1318 (citation omitted). As discussed in the alternative merits
analysis that follows, this ineffectiveness claim lacks any merit.
Therefore, Harmon has not shown that he can satisfy an exception to
the bar.

page 257, lines 15-23).[9] In the Defendant's
motion, he complains that he was prevented
from explaining his side of the story, yet
even when the State objected regarding this
issue the Defendant still answered the
question for the jury. (TT, page 259, lines 7-
11). Even after the Court sustained the
State's objection and after the Defendant
answered the question, the State did not ask
for a curative instruction asking the jury to
disregard the Defendant's response. Id. Even
if they had been instructed to disregard this
response, they heard the Defendant articulate
his intent upon entering the property on the
other occasions during his testimony cited
above.

The case law regarding this issue is
clear "that in order to obtain postconviction
relief, a defendant claiming his or her right
to testify was violated must show that
counsel's performance was deficient and that
deficient performance prejudiced the defense."
Oisorio v. State, 676 So.2d 1363 (Fla. 1996)
and Barrientos v. State, 31 FLW D1447c (Fla.
4th DCA 2006). Clearly, the Defendant cannot
establish that his counsel's performance was
deficient regarding this issue, nor can he
show he was prejudiced when the jury actually
heard what he complains they did not hear. One
of the most telling exchanges was as follows:
the Defendant's counsel asked him "... what
was your plan once you entered the property?
What was it that caught your eye? What did you
intend on doing?" Thereafter, the Defendant
replied, "Just getting the copper and selling
it for the next day. I don't have nowhere to
go. I needed some change just so I could go to
a motel and take a shower or something." (TT,
page 255, lines 1-7). The record is clear that
the Defendant was able to convey to the jury
[and] that he explained his intent to the

---

[9] At the postconviction stage, Harmon acknowledged that the
jury heard his account as to why he entered the property, but
states that the trial judge should have permitted him to
"elaborate" on his side of the story. Resp. Ex. I at 6.

jury. Therefore, the State suggests the
Defendant's second claim is refuted on the
record and can be denied without holding an
evidentiary hearing.

Resp. Ex. I at 25-26. The circuit court denied Harmon's motion, as
to this claim, based on the State's reasoning. Id. at 30. Harmon
did not appeal the trial court's denial.

Given the record in the instant action, Harmon would not be
entitled to relief because the state court's adjudication of this
claim is entitled to deference under AEDPA. After a thorough review
of the record and the applicable law, the Court concludes that the
state court's adjudication of this claim was not contrary to
clearly established federal law and did not involve an unreasonable
application of clearly established federal law. Nor was the state
court's adjudication based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings. Accordingly, Harmon is not entitled to relief on the
basis of this claim.

Even assuming that the state court's adjudication of this
claim is not entitled to deference, and that the claim presents a
sufficiently exhausted issue of federal constitutional dimension,
Harmon's claim is, nevertheless, without merit. The record fully
supports the trial court's conclusion. In evaluating the
performance prong of the Strickland ineffectiveness inquiry, there
is a strong presumption in favor of competence. See Anderson v.
Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014),

cert. denied, 135 S.Ct. 1483 (2015). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Harmon must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

As previously explained, since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163. As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697. Even assuming arguendo deficient performance by defense counsel,[10] Harmon has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected when the trial court limited Harmon's testimony as to his intent to commit theft.

The State's evidence against Harmon was overwhelming, and the jury heard Harmon's testimony as to his intent upon entering the property. <u>See</u> Tr. at 253 (testifying that he saw "some abandoned copper" and "thought it had been thrown away so [he] could make some extra change if [he] went to go get it"), 259 ("I believed that they was going to throw it away[.]"), 260 ("I wanted to get it before someone else did."). Additionally, in closing argument, defense counsel reminded the jury that Harmon had testified as to his intent upon entering the property that day. <u>See</u> <u>id</u>. at 286

---

[10] <u>See</u> <u>Harmon v. State</u>, 987 So.2d 241 (Fla. 1st DCA 2008) (Browning, C.J., concurring) (stating "the trial court erred by not permitting Appellant to testify about his intent at the time of the charged offense[;]" however, the error was "not preserved by Appellant presenting the issue[] to the trial court for its consideration").

(stating that, instead of exercising his right to remain silent, Harmon "took the stand to tell [the jury] what he was doing"). Therefore, Harmon's ineffectiveness claim is without merit since he has not shown any resulting prejudice. Harmon is not entitled to habeas relief on the basis of this ineffectiveness ground. See Response at 13-17.

### B. Ground Two

As ground two, Harmon asserts that counsel was ineffective when she failed to: (a) impeach Chris Scarborough, a State witness, when he testified that the area was fenced-in and secure, and (b) object to the State's pretrial motion in limine, which ultimately prohibited Harmon from arguing that the enclosure surrounding the air-conditioning units was not a structure. Harmon raised these claims in his first Rule 3.850 motion, see Resp. Ex. I at 6-8; the State responded, see id. at 26-28, and the circuit court denied Harmon's motion, as to these claims, based on the State's reasoning, see id. at 30. Harmon did not appeal the trial court's denial. Respondents contend that the claims are procedurally barred since Harmon failed to appeal the trial court's denial. See Response at 17. On this record, the Court agrees that the claims have not been exhausted, and are therefore procedurally barred since Harmon failed to raise the claims in a procedurally correct manner. Harmon has not shown either cause excusing the default or

23

actual prejudice resulting from the bar.[11] Moreover, he has failed

to identify any fact warranting the application of the fundamental

miscarriage of justice exception.

Even assuming that Harmon's claims are not procedurally

barred, Harmon is not entitled to relief. As previously stated,

Harmon raised these ineffectiveness claims in his first Rule 3.850

motion, and the State responded as follows:

> In Ground 3, the Defendant contends that
> his counsel was ineffective for failing to
> impeach Chris Scarborough, a State witness,
> when he described the area in question as
> being a fenced in secure area. The Defendant
> alleges in his motion that his counsel ought
> to have attempted to impeach Mr. Scarborough
> when he described the area as a fenced in
> secure area. Simply put, the record refutes
> this claim, because the Defendant himself with
> his own testimony acknowledges this was a
> fenced in area. His counsel asked him what
> prompted him to go into this fenced in area,
> and the Defendant replied, "... I seen some
> abandoned copper, and I thought it had been
> thrown away so I could make some extra change
> if I went to go get it." (TT, page 253, lines
> 4-7). Furthermore, his counsel asked him how
> he got into the small fenced area asking him
> how he entered into the fence, and he replied,
> "There was an alleyway right behind the
> business, and I just slipped right through the
> alley and started picking up the pieces." (TT,
> page 255, lines 8-12). And, when being shown a
> picture and when asked where he went to get

---

[11] As previously explained, in order to overcome the default,
Harmon must also demonstrate that the underlying ineffective-
assistance-of-trial-counsel claim has "some merit." Martinez, 132
S.Ct. at 1318 (citation omitted). As discussed in the alternative
merits analysis that follows, these ineffectiveness claims lack any
merit. Therefore, Harmon has not shown that he can satisfy an
exception to the bar.

into the small fenced area, the Defendant replied, "I walked up this alley right here, and then I just came through this gap ..." (TT, page 256, lines 12-15). And, the Defendant was asked by his counsel if it was his testimony that he slipped through the fence, [and] the Defendant replied, "Yes, ma[']am." (TT, page 256, lines 23-25). Lastly, the Defendant was asked if the only place he went in was the fenced in area outside, [and] the Defendant stated, "That's right." (TT, page 257, lines 5-7). During his direct examination, the Defendant continued to answer questions about him being inside the fenced in area, and he never once stated it was not fenced in. Even once during cross examination, the following exchange occurred:

> State: Mr. Harmon, this area was completely fenced in, is that right?
>
> Defendant: Square wise, yes. (TT, page 262, lines 3-5 and 13-15)[.]

The Defendant, as noted above, made numerous admissions during his testimony that the area on this property that he entered was fenced in. He now ought not to complain [that] his counsel was ineffective for not impeaching Mr. Scarborough with respect to this issue. Furthermore, failing to impeach Mr. Scarborough regarding the structure is not an error of such magnitude that it falls "measurably outside the range of professionally acceptable performance." See State v. Lewis, 838 So.2d 1102 (Fla. 2002) citing Rutherford v. Moore, 774 So.2d 637 (Fla. 2000), particularly in light of his admissions regarding this issue. The Lewis Court also stated that the defendant in that case "did not suffer prejudice since there was additional evidence that implicated him as the perpetrator." Id. Likewise, the Defendant in this case did not suffer prejudice either since there was additional evidence that implicated him in the Burglary of an Occupied Structure, namely Ms. Sara Miller. Furthermore, putting this one issue in context

with the overwhelming evidence of Defendant's
guilt, there is no reasonable probability that
impeachment regarding the structure would have
put the case in such a different light as to
undermine confidence in the conviction.
Therefore, the Defendant has failed to
establish sufficient deficiency of his
attorney and prejudice. Accordingly, the State
suggests this Honorable Court may deny the
Defendant's third claim without an evidentiary
hearing.

. . . .

In Ground 4, the Defendant alleges that
his counsel was ineffective for failing to
object to the State's pretrial Motion in
Limine, which prohibited the Defendant from
challenging a material element of the charged
offense (definition of curtilege [sic] of a
structure).[12] However, again, the Defendant
is incorrect regarding his claim. His counsel
did object when the issue was raised regarding
the State's motion in which it asked for a
special instruction to define curtilege [sic].
(TT, pages 159-164). Furthermore, the Court
sustained the Defendant's counsel's objection
and ruled in favor of the Defendant (TT, page
164).[13] Also, in answering this claim, the
State also relies on its argument in Ground 3,
supra. This claim also should be denied
without conducting an evidentiary hearing.

Resp. Ex. 26-28. The circuit court denied Harmon's motion, as to

these claims, based on the reasoning provided by the State. Id. at

30. Harmon did not appeal the trial court's denial.

On this record, Harmon would not be entitled to relief because

the state court's adjudication of these claims is entitled to

---

[12] See Resp. Ex. C at 41-42, State's First Motion in Limine.

[13] See Tr. at 163-64, 297.

deference under AEDPA. After review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Harmon is not entitled to relief on the basis of these claims under ground two.

Even assuming that the state court's adjudication of these claims is not entitled to deference, and that the ineffectiveness claims present sufficiently exhausted issues of federal constitutional dimension, Harmon's claims under ground two are, nevertheless, without merit. The record fully supports the trial court's conclusions. In Florida, a person commits burglary by "entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein . . . ." Fla. Stat. § 810.02(1)(a) (2007). The terms "dwelling" and "structure" are defined to include "the curtilage thereof." Fla. Stat. §§ 810.011(1), (2) (2007). The area surrounding a dwelling or structure must lie within "some form of an enclosure" to be considered part of the curtilage. State v. Hamilton, 660 So.2d 1038, 1044-45 (Fla. 1995).

Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. See Dubose v. State, 75 So.3d 383, 384 (Fla. 1st DCA 2011); Chambers v. State, 700 So.2d 441, 441-42 (Fla. 4th DCA 1997), rev. denied, 703 So.2d 475 (Fla. 1997); Tr. at 159-64; Resp. Ex. C at 41-42, State's First Motion in Limine; 43, State's First Request for Special Jury Instruction. Even assuming arguendo deficient performance by defense counsel, Harmon has not shown any resulting prejudice. Therefore, Harmon's ineffectiveness claims under ground two fail because he has shown neither deficient performance nor resulting prejudice.

## C. Grounds Three and Four

Harmon asserts that the trial court committed fundamental error (ground three), and lacked subject matter jurisdiction to enter the judgment and impose sentence because the Information was not supported by sworn testimony from a material witness (ground four). Harmon raised these claims as a supplemental ground to his second Rule 3.850 motion, see Resp. Ex. I at 157; the State responded to the claims, see id. at 227-63; and the circuit court denied Harmon's motion, as to these claims, for the reasons set forth in the State's response, see id. at 264. On Harmon's appeal, the appellate court affirmed the trial court's denial per curiam, see Harmon, 64 So.3d 1264; Resp. Ex. L, and later denied Harmon's motion for rehearing, see Resp. Exs. M; N; O; P.

These claims present issues purely of state law that are not cognizable on federal habeas review. The purpose of a federal habeas proceeding is review of the lawfulness of Harmon's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[14] <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g denied</u>, 501 U.S. 1277 (1991). Harmon's conviction and sentence do not violate the United States Constitution.

For a defective Information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction. <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."). Under Florida law, the state circuit courts have jurisdiction over all felonies. <u>See</u> Fla. Stat. § 26.012(2)(d). Moreover, the Information in Harmon's case, <u>see</u> Resp. Ex. C at 9, properly set forth the elements of burglary of an occupied structure, and therefore met the minimum requirement for

---

[14] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

29

invoking the jurisdiction of the state circuit court. Additionally, the Information contained the required sworn oath of the Assistant State Attorney, certifying that the allegations in the Information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," that the prosecution "is instituted in good faith," and "that testimony under oath has been received from the material witness(es) for the offense." Id. Such a sworn oath by the prosecutor that he received testimony under oath from the material witness(es) for the offense is sufficient pursuant to applicable Florida law. See Fla. R. Crim. P. 3.140(g).

Undoubtedly, the trial court had subject matter jurisdiction over Harmon's case since the Information charged him with burglary of an occupied structure in violation of Florida Statutes section 810.02(3). See Resp. Ex. C at 9. Thus, these grounds do not warrant federal habeas relief.

### D. Supplemental Grounds

In Harmons' Supplement (Doc. 5), he asserts that the trial court erred when it: denied his motion for new trial, and sentenced him as a habitual felony offender.[15] These claims present issues

---

[15] Harmon raised his sentencing claim in his pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. S at 1-5. The court denied the motion, see id. at 6-7; and the appellate court affirmed the trial court's denial per curiam, see Harmon, 93 So.3d 1016; Resp. Ex. T, and later denied Harmon's motion for rehearing, see Resp. Exs. U; V.

purely of state law that are not cognizable on federal habeas review. As previously stated, Harmon's conviction and sentence do not violate the United States Constitution. <u>See</u> Resp. Ex. C at 13, Notice of Intent to Classify Defendant as an Habitual Felony Offender; Fla. Stat. § 775.084; <u>see</u> <u>also</u> Sentencing Tr. at 99-100 (Harmon's acknowledging the two prior felony convictions); Resp. Ex. C at 71-75.

## IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Harmon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Harmon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Harmon appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of April, 2015.


*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge


sc 4/13
c:
Willie Lee Harmon
Ass't Attorney General (Heller)